UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| DANNY MCDONALD | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 2:08-CV-280 |
| | ) | |
| SULLIVAN COUNTY JAIL, OFFICER RAMSEY, OFFICER MEADE, OFFICER HARLESS, OFFICER PAYNE, NURSE LAURA, NURSE PENNY, OFFICER STEWART, CPS WORKER TINA, CPS WORKER DANIELL, and JUDGE WOLFORD | ) | |

### MEMORANDUM and ORDER

Former prisoner Danny McDonald has filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that he was subjected to excessive force while he was confined in the Sullivan County jail. Plaintiff's application to proceed *in forma pauperis* [Doc. 1] is **GRANTED.**

### I. Plaintiff's Contentions

As his statement of claims, plaintiff incorporates a "letter" attached to his pleading, which contains the following allegations. On June 17th [in 2008, presumably], plaintiff had a verbal confrontation with defendant Officer Ramsey. Upon being taken to a cell in the jail, plaintiff had a physical confrontation with another inmate. Plaintiff was moved twice more, once to a trustee cell, where he had

a verbal confrontation with a fellow prisoner, and then to a holding cell, where an unidentified officer sprayed him with pepper spray for no apparent reason.

The next day, plaintiff was placed in a holding cell—the obvious implication being that he had been moved from the holding cell the day before—and sprayed with pepper spray by defendant officer Meade for no apparent reason. Later that night, defendant officers Ramsey, Meade, and Harless disturbed plaintiff's sleep and defendant Ramsey threatened to kill him.

On June 19th, plaintiff told CPS workers, Tina and Danielle, that the officers were trying to kill him and asked them to report the incident to the Judge and anyone who would listen. Afterwards, the CPS workers told plaintiff that they had relayed his contentions to the front officer.

On June 20th, defendant Ramsey removed plaintiff from the cell, supposedly to take him for a visit with Tina and Danielle, but instead flipped him on the back of his head, slamming it into the concrete. Plaintiff's head began to bleed and he passed out. The CPS workers were told that plaintiff was a danger to the officers and that he could not visit with them. The officers sent them home. Later that night, defendant Officer Harless removed plaintiff from his cell and required him to "place" his hands and lift up his leg. When plaintiff lifted his leg, Officer Harless wrestled him to the floor for no apparent reason. Plaintiff started shaking and "acting crazy."

The following day, plaintiff told defendant nurses Penny and Laura that he needed his medication and he also told them about what had happened to him. Nurse Laura replied that she would "tell someone." Plaintiff relayed the same allegations to Officer Stewart, who responded that he did not believe that an officer of the law would try to harm him.

On June 22nd, plaintiff was placed in a holding cell, still shaking and acting crazy, when Officer Payne entered and slammed plaintiff's head against the bunk and wall, in the presence of other officers. The next day, plaintiff activated the fire sprinkler and was restrained in a straight jacket. While plaintiff was escaping from the straight jacket, Officer Payne entered his call and gave him a "charlie horse" on his leg.

On June 24th, plaintiff was taken to Lakeshore Mental Hospital for an evaluation, where his injury was photographed. Upon his return, five days later, plaintiff was taken to a holding cell and this made him crazy again. Plaintiff began kicking the door and requesting his medication.

Plaintiff showed his injury to Judge Wolford when he appeared in court on July 1st, but was not permitted "to say one word." Four days later, he was released from the jail, on bond. Plaintiff developed a deep local police paranoia from being threatened by the officers, so on July 7th, he went to the Potomac Hospital in

Woodbridge, Virginia to be evaluated. When he returned from Virginia, his family was worried and took him to see a doctor, who recommended ten days of treatment at the Woodridge Mental Hospital. In August, plaintiff tried to tell Judge Wolford about his allegations, but the Judge declined to allow him to elaborate, responding that there was nothing he could do.

## II. Screening the Complaint

The complaint must now be screened and, if it is frivolous or malicious; fails to state a claim; or names defendants who are immune, it must be dismissed. 28 U.S.C. § 1915A and § 1915(e). For ease of discussion, the claims have been divided into categories.

A. Claims against the Sullivan County Jail

The first defendant named in the complaint is the Sullivan County jail. However this defendant is a non-suable entity because it is a building and not a "person" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 688-90 (1978); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, **1 (6th Cir. May 1, 1997).

B. Claims against Judge Wolford

Plaintiff alleges that he displayed his injury to defendant judge, but that Judge Wolford refused to hear his explanation. A judicial officer, such as Judge Wolford,

enjoys absolute immunity from lawsuits for monetary damages while performing his judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Mann v. Conlin*, 22 F.3d 100, 103, (6th Cir. 1994). Presiding over criminal cases and exerting control over the courtroom and the criminal proceedings occurring therein lie within the scope of Judge Wolford's jurisdiction. Therefore, Judge Wolford possesses judicial immunity from the claims for damages in this lawsuit.

C. <u>Claims against Defendants Tina, Danielle, Penny, Laura, & Stewart</u>

Plaintiff maintains that he advised defendant CPS workers Tina and Danielle and defendant nurses Penny and Laura about his claims of wrongful treatment. According to plaintiff, the CPS workers responded that they had told the front officer and Nurse Laura replied that she would tell someone. Further, plaintiff made those same allegations to defendant Officer Stewart, but this officer replied that he did not believe a law enforcement officer would try to harm plaintiff.

To the extent that plaintiff is seeking to impose supervisory liability on the officer defendant, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir.1995), *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Even though respondeat superior does not provide a valid basis of liability, a supervisor can be held liable if he played an active role in the alleged

misconduct, but not if he merely failed to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). To show active unconstitutional conduct, plaintiff must demonstrate that a defendant implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of his subordinates. *Leach v. Shelby County Sheriff*, 891 F.2d 1244 (6th Cir. 1989). Nothing of the sort has been alleged here. Therefore, any and all claims constructed on supervisory liability or a failure to act are frivolous and are **DISMISSED**.

If, however, plaintiff is asserting that these five defendants failed to protect him from actions by the officers, such a claim is not viable under the facts alleged. To prevail on a "failure to protect" claim, plaintiff must show that: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Plaintiff has not asserted that any of these defendants were present during the complained of incidents. Thus, they did not have the opportunity, much less the means, to prevent harm from happening. Any failure-to-protect contentions fail to state a claim entitling plaintiff to relief under section 1983 and are, likewise, **DISMISSED**.

D. Claims of Verbal Threats/ Disturbed Sleep

These claims involve plaintiff's contentions that defendants Ramsey, Meade,

and Harless awakened him and that the first defendant threatened to kill him. The Eighth Amendment to the United States Constitution proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, "harassment and verbal abuse ... do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa* 357 F.3d 539, 546 (6th Cir. 2004). Though defendants' alleged behavior may be petty, oppressive, and unprofessional, it is not unconstitutional. *Ivey v. Wilson*, 832 F.2d 950, 954 (1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.").

Put simply, plaintiff has no protectable right not to have threats made against him or verbal abuse directed towards him. *See Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (finding that a federal right must be actually denied, not merely threatened); *see also Ivey*, 832 F.2d at 954-55 (explaining that verbal abuse is not recognizable under § 1983). Thus, this claim lacks an arguable basis in law and is frivolous within the meaning of 28 U.S.C. § 1915(d).

E. <u>Claims of Excessive Force</u>

The remaining claims, as the Court understands plaintiff's assertions, involve the alleged use of excessive force against him. Under the Eighth Amendment, the use

7

of excessive force against prisoners may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). However, not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Id*. (citations omitted).

An Eighth Amendment claim is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id*. at 834, (i.e., whether the force was "harmful enough" to establish a constitutional violation). Though plaintiff need not prove significant injury, *see Hudson*, 503 U.S. at 8-10 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury), he must show more than a *de minimis* one to satisfy this element of his claim. *Id.* at 8-9 (finding that Eighth Amendment allows minimal uses of physical force which are not "repugnant to the conscience of mankind") (quoting *Whitley*, 475 U.S. at 327).

The subjective inquiry is focused on whether the defendants possessed a culpable state of mind. In the context of excessive force, the question is one of defendants' intent—whether defendants used force in a good faith effort to restore

8

order or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 320. Thus, plaintiff needs to produce evidence that the force was "harmful enough to establish a constitutional violation" and applied "maliciously and sadistically to cause harm" rather than in a "good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7-8.

Plaintiff's claims have been divided into two categories for ease of discussion. In the first set of claims, plaintiff asserts that he started shaking and "acting crazy," after defendant Harless wrestled him to the floor for no apparent reason and that, during plaintiff's attempt to free himself from the straight jacket in which he had been placed, defendant Payne entered his cell and gave him a charlie horse.[1]

There are no allegations that plaintiff sustained more than a de minimis injury as a result of the acts complained of. Hence, because there is nothing from which to infer that the force alleged was "harmful enough to establish a constitutional violation," plaintiff has failed to satisfy the objective element of an Eighth Amendment claim. Moreover, even if plaintiff has established the objective component, he has not shown,

---

[1] A charlie horse is a muscle cramp which can be quite painful. Muscle cramps occur when a muscle involuntarily contracts and cannot relax. *See* M. Stoppler and W. Shiel, Muscle Cramp: A Real Pain (2009), online at http://www.medicinenet.com/script/main/art.asp?articlekey=47633 (as visited May 17, 2010, and available in Clerk of Court's case file).

at least with respect to the charlie horse episode, that the force was applied "maliciously and sadistically to cause harm," since the force occurred only in response to plaintiff's attempt to extricate himself from the straight jacket in which he had been placed when he had started "acting crazy."

The second category of claims involve allegations that, on June 18, defendant Meade sprayed him with pepper spray without reason; that, on June 20th, while purportedly escorting plaintiff to visit the CPS workers, defendant Ramsey flipped him and slammed his head onto the concrete, causing his head to bleed and plaintiff to pass out; and that, on June 22, defendant Payne entered the cell where plaintiff was shaking and "acting crazy" and slapped plaintiff's head against the bunk and wall.

The Court cannot say that these contentions are frivolous or malicious, that they fail to state a claim, or that the named defendants enjoy immunity from damages. Ultimately, it may be shown that defendants employed "the good faith use of physical force in pursuit of valid penological or institutional goals," given plaintiff's descriptions of his own conduct during his confinement at the jail. *See Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement,

supplying medical needs, or restoring official control over a tumultuous cellblock.") (citations and internal quotation marks omitted). However, that determination cannot be made at this point in the proceedings, given the factual allegations offered in this *pro se* former prisoner's pleadings and the indulgence with which they must be viewed. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### III. Service on Defendants

Accordingly, the Clerk is **DIRECTED** to send plaintiff service packets for defendant officers Ramsey, Meade, and Payne. (Each packet contains a blank summons and USM 285 form.) Plaintiff is **ORDERED** to complete the service packets and to return them to the Clerk's office within twenty (20) days of the date on this Order. Plaintiff is forewarned that failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

When the completed service packets are received by the Clerk, the summonses will be signed, sealed, and forwarded to the U.S. Marshal for service upon defendants. Defendants are **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure.

Plaintiff is **ORDERED** to inform the Court of any address change within ten (10) days following such change. He is further cautioned that his failure to do so will

result in a dismissal of this action for failure to prosecute.

Finally, all defendants, save these three, are **DISMISSED** from this action for failure to state a claim against them. Fed. R. Civ. P. 12(b)(6).


**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE